UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

American Wire Group, LLC

Plaintiff,

v.

WTEC Holdings Corp. d/b/a WTEC Energy,

Defendant.

Case No. 1:23-cv-4678

Hon. Lindsay Jenkins

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT TO WITHDRAW COUNT IV WITH PREJUDICE**

Defendant Wind Turbine and Energy Cables Corp. ("WTEC" or "Defendant") respectfully submits this Opposition to Plaintiff's Motion for Leave to Amend its Complaint to Withdraw Count IV with Prejudice (the "Motion").

**STATEMENT OF FACTS**

1. American Wire Group, LLC ("AWG" or "Plaintiff") filed this lawsuit on July 19, 2023, asserting six counts, including a breach of indemnity claim (Count II) and a breach of express warranty claim (Count IV). (Dkt. 1.) From the outset, the facts underlying the indemnity claim and the warranty claim have been inseparable: both arise from the same allegedly defective cable, the same parties, the same course of dealing, and the same disputed conduct. There is no neat separation between distinct factual universes after three years of jointly litigating two claims that arise from identical facts. For that reason, the parties conducted unified discovery on both claims and briefed them together at summary judgment.

2. On September 21, 2023, barely two months after filing suit, AWG moved for partial summary judgment. (Dkt. 17.) The Court denied that premature motion on September 26, 2023.

1

(Dkt. 22.) Thus, AWG's continued pursuit of the warranty claim, along with the indemnity claim, was not accidental.

3.      On October 24, 2023, AWG filed its First Amended Complaint. (Dkt. 27.) It contained the warranty claim. (*Id.*, ¶¶ 94-101.)

4.      On January 30, 2024, AWG moved for leave to file a Second Amended Complaint—not to remove Count IV, but to add two new tortious interference claims. (Dkt. 39.) The Court granted leave on February 13, 2024. (Dkt. 48.) AWG filed its Second Amended Complaint on February 20, 2024. (Dkt. 52.) The Second Amended Complaint contained the warranty claim. (*Id.*, ¶¶ 101-108.)

5.      WTEC moved to dismiss the tortious interference claims, and, on May 4, 2024, the Court granted WTEC's motion in part and denied it in part. (Dkt. 61-62.) AWG filed its Third Amended Complaint on May 16, 2024. (Dkt. 66.) The Third Amended Complaint contained the warranty claim. (*Id.*, ¶¶ 100-107.)

6.      On February 20, 2025, following nearly two years of discovery, AWG filed an unopposed motion to voluntarily dismiss Count VII of its Third Amended Complaint—the sole remaining tortious interference claim. (Dkt. 84-85.) WTEC consented to the motion. AWG maintained the warranty claim.

7.      During the spring and summer of 2025, the parties filed and briefed cross-motions for summary judgment. (Dkt. 89-120.) Notably, WTEC moved for summary judgment on Counts II and VI together (*see* Dkt. 100-101), and AWG opposed together (*see* Dkt. 109)—treating the claims as a unified factual package. AWG did not oppose WTEC's motion for summary judgment in its entirety, moving to voluntarily dismiss, instead of defend, its declaratory judgment claim

2

(Count I). (Dkt. 113.) But, AWG actively opposed WTEC's motion on the remaining grounds, including vigorously defending against dismissal of Count IV (the warranty claim). (Dkt. 109.)

8.     On November 7, 2025, the Court issued its Summary Judgment Order. (Dkt. 121-122.) The Order dismissed all of AWG's disputed claims besides Count II (the indemnity claim) and Count IV (the warranty claim). (*Id.*)

9.     Critically, the Court's Order held that, with regard to the indemnity claim, **whether AWG cooperated in good faith under the applicable indemnification provision remains an open question of fact for trial**. (Dkt. 122, pp. 6-7.) The Court observed that "a reasonable jury could well conclude from these events that, on balance, American Wire's actions do not amount to good faith cooperation." (*Id.*, p. 7.) **The Court's characterization of "these events" included whether "AWG excluded WTEC from communications with Signal, affirmatively obstructed WTEC's involvement in relevant conversations and decisions regarding replacement, and during that period Signal continued to incur millions of dollars in damages.**" (*Id.*) (**emphasis added**). In other words, this Court understood—and explicitly held—that allegedly dilatory, obstructing, or otherwise bad-faith behavior of AWG occurring *before* the indemnity arose in March 2023 nevertheless bears on the real factual issues for trial. (*Id.*, pp. 6-10.)[1] That issue is whether AWG acted in good faith—which, in this case, cannot be fully

---

[1] Indeed, in the Court's Summary Judgment Order, the Court preserved several factual questions for the jury related to the indemnity claim, including, without limitation: "[U]nresolved questions of fact prevent the court from deciding…whether American Wire properly exercised its discretion in directing Signal to replace WTEC's cables"; "WTEC is similarly dependent on American Wire for fair and complete disclosure. This is especially true given American Wire's insistence that WTEC not communicate directly with Signal"; "[I]f it is true that American Wire prevented WTEC from 'inspect[ing] the cable and confirm[ing] that the at-issue cable was its own,' WTEC can demonstrate substantial prejudice"; "[A reasonable jury] might acknowledge a possible contradiction: Signal didn't keep records as to where it installed each brand of reels, *see* dkt. 110 ¶¶ 38-39, yet American Wire's first demand letter stated that "WTEC shipped the Cable directly to the Sunflower Project and, therefore, there can be no dispute that WTEC's Cables, rather than some other manufacturer's cable, are the defective wiring at issue.").

understood or adequately explained to a jury if AWG's effort to ditch most of the record of the case succeeds.

10. On November 21, 2025, AWG filed its Fourth Amended Complaint—its fifth pleading—only omitting Count I from the Complaint.[2] (Dkt. 123-124.) The warranty claim remained. (Dkt. 124, ¶¶ 100-107.)

11. On January 28, 2026, AWG filed a motion to clarify sequencing and burdens of proof at trial. (Dkt. 129-130.) While the stated purpose was to "clarify" the Court's Order, AWG's stated intention matters much less than what it actually *asked* this Court to do: it argued that this Court essentially *must* preclude relevant evidence that WTEC could present at trial based on operation of Illinois insurance case law. (Dkt. 138, 12:7-13:16.) This Court expressly disagreed at the February 10, 2026 conference, stating both that this sort of argument was better addressed in motions *in limine*, and that "I could see where the question or issue of defectiveness might be relevant to the affirmative defense in some limited circumstances, including whether AWG acted in good faith." (*Id.*, 18:12-16.) Neither in AWG's motion to clarify, nor at the court proceeding, did AWG seek to withdraw Count IV.

12. Prior to the filing of its motion, AWG sought, and for the reasons above did not obtain, WTEC's consent to withdraw the warranty claim.

13. All other efforts to gut WTEC's defense having failed, on May 8, 2026—less than four months before trial, and after five complaints, two summary judgment motions, multiple rounds of dispositive motion practice, and a post-summary-judgment sequencing hearing—AWG filed the present Motion seeking to withdraw Count IV for the first time. (Dkt. 140.) Despite having

---

[2] In the Motion, AWG alleges that it made no other substantive amendments to the Complaint in its fourth amended complaint because "AWG understood the Court's order to allow amendment for the limited purpose of omitting Count I only." (Dkt. 140, pp. 3-4). We will allow this Court to speak for itself regarding its Summary Judgment Order.

forced WTEC to defend against the intertwined breach of indemnity and breach of express warranty claims through the motion to dismiss stage, discovery and summary judgment, AWG now seeks to withdraw Count IV under the guise of cooperation. (*Id.,* p. 5.) This Motion, filed on the eve of trial, should be denied as dilatory, untimely, and prejudicial to the case that WTEC has been required to prepare for and defend over the last three years.

## LEGAL STANDARD

Under Rule 15(a), while leave to amend should be "freely given when justice so requires[,]" a court may deny the leave to amend for: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies; (4) undue prejudice to the opposing party; and (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The movant bears the burden of demonstrating that no undue prejudice will result. *Pethtel v. Veterans Roofing PLLC*, No. 25-cv-01648, 2026 WL 1242895, at *2 (S.D. Ill. May 6, 2026).[3] Here, the *Foman* factors weigh heavily in favor of denial.

## ARGUMENT

### I. Plaintiff's Motion is the Product of Bad Faith, Undue Delay and Dilatory Motive

The procedural history of this case speaks for itself. Over the course of three years, AWG has filed five complaints, moved for partial summary judgment twice, added and voluntarily dismissed claims for tortious interference and declaratory judgment, and litigated a post-summary-judgment sequencing motion—yet never once sought to withdraw Count IV. (*See supra*, pp. 1-5.) AWG has now waited until the eve of trial to seek withdrawal, alleging for the first time that the warranty claim has long been "abandoned." (Dkt. 140, p. 7.) The Motion should be denied because

---

[3] In the Motion, AWG cites only two cases. (Dkt. 140, p. 6.) Neither supports the proposition that withdrawing Count IV at this stage of litigation will not cause undue prejudice. *See USA for Use & Benefit of Spirtas Worldwide, LLC v. SGLC Consulting LLC*, No. 3:21-CV-00182-MAB, 2021 WL 5564901, at *2 (S.D. Ill. Nov. 29, 2021) (granting amendment where the "case is still in its early stages" before any scheduling order, discovery or dispositive motions had been filed); *Verotix Systems, Inc. v. Follett Library Resources*, 235 F. Supp. 2d 851, 853 (N.D. Ill. 2002) (addressing amendment in the context of subject matter jurisdiction).

AWG's belated and transparent effort to withdraw Count IV—a claim that AWG fought to preserve at summary judgment—constitutes bad faith, undue delay, and dilatory motive.

First, it is flatly contradicted by the docket—complaint after complaint alleging the same warranty claim—as well as the litigation record that "any reasonable observer of this litigation and the parties' conduct would perceive that AWG had, in effect, long abandoned the warranty claim." (Dkt. 140, p. 7.) AWG pleaded Count IV with substantively identical allegations in every one of its five complaints. (*See* Dkt. 1, 27, 52, 66, 124.) AWG successfully defended Count IV against WTEC's summary judgment motion. (*See* Dkt. 122.) And, as recently as November 21, 2025— after this Court's summary judgment order—AWG filed the Fourth Amended Complaint retaining Count IV in full, seeking "damages, including lost profits, in an amount to be proven at trial." (Dkt. 124, p. 15.) A claim that a plaintiff actively pleads in five successive complaints, defends at summary judgment, and carries into its operative complaint is not an "abandoned" claim. It is a live claim that AWG prosecuted until doing so became strategically inconvenient. If AWG truly believed it had abandoned the warranty claim, it had every opportunity to dismiss it—at the pleading amendment deadline in February 2024, when it voluntarily dismissed Count VII in February 2025, when it moved to dismiss Count I at summary judgment,[4] when it filed its Fourth Amended Complaint in November 2025, or when seeking clarification from the Court as recently as February 10, 2026.

AWG's failure to withdraw Count IV at any of these junctures fatally undermines its claim of abandonment and confirms that this Motion is driven by last-minute, bad-faith, tactical calculation, not genuine disuse. *See Vitrano v. United States*, 721 F.3d 802 (7th Cir. 2013)

---

[4] AWG alleges that its opposition to WTEC's summary judgment motion on the breach of warranty claim was "purely defensive[.]" (Dkt. 140, p. 7.) Yet, WTEC also moved to dismiss Count I at summary judgment and AWG did not act "defensive" but instead moved to dismiss the claim on its own accord. (Dkt. 113.)

(affirming denial of amendment designed to secure a "tactical advantage in the face of impending defeat"); *Talton*, 2004 WL 3119007, at *4 n.3 (noting that the label "bad faith" need not rise to the level of unethical culpability but "reinforces the undue prejudice and undue delay concerns that independently would warrant rejection"). The simple fact is this: AWG never saw fit to withdraw the warranty claim until all its other efforts to gut the record this Court specifically preserved failed. AWG's bad-faith effort to now withdraw Count IV must warrant rejection.

Second, AWG's claim that there is no undue delay because "there are more than three months left before trial" (Dkt. 140, p. 6) confuses proximity to trial with the totality of the delay. The relevant inquiry is *not* how quickly WTEC ought to be able to adapt: it is how long the movant has known the basis for the amendment and what resources have been expended in reliance on the existing pleadings. *See Park v. City of Chicago*, 297 F.3d 606, 613 (7th Cir. 2002) (affirming denial where plaintiff delayed six months after learning the basis for amendment); *Johnson v. Winstead*, 447 F. Supp. 3d 715, 723 (N.D. Ill. 2019) (holding that "undue delay, standing alone, justifies denial" given "the resources that the parties and two levels of the federal judiciary have invested in this case").

AWG alleges that the crux of its case has always been Count II, and it has long abandoned the warranty claim. (Dkt. 140, p. 7). As such, AWG's delay, i.e., the time it has known the basis for amendment, spans not just six months, but close to three years. The resources this Court and the parties have invested—full discovery, summary judgment briefing, a sequencing motion, and ongoing trial preparation—were all built around a case that includes Count IV. To permit AWG to unravel the intertwined factual and legal framework of Counts II and IV at this stage would reward the very delay that Rule 15(a) is designed to prevent.

Third, the Motion reflects dilatory motive that crosses the line from permissible litigation strategy into impermissible gamesmanship. *See Talton*, 2004 WL 3119007, at *6 (denying motion where "the proposed amendment reflects dilatory motive and if granted would permit unfair strategic gamesmanship"); *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1036–37 (7th Cir. 1998) (affirming denial of leave to file a tenth amended complaint, agreeing with the magistrate judge that "[t]he plaintiffs are . . . keeping the defendants on a litigation treadmill"). AWG has now filed five complaints and seeks its sixth pleading alteration. Each iteration has required WTEC to reexamine the operative pleadings, reassess its defenses, and respond accordingly. The burden is compounded because Counts II and IV have been developed together at every stage—the same discovery, the same depositions, the same summary judgment briefing. Having litigated these claims as a unified whole for three years, AWG cannot now ask this Court to sever them on the eve of trial. Five complaints and a sixth motion to amend—with the justification that the warranty claim had been long abandoned—appear to be more than just hollow and are inconsistent with three years of litigation.

As AWG's Motion is the product of bad faith, undue delay and dilatory motive, this Court should not permit AWG to abandon a claim it actively prosecuted for three years—that this Court specifically preserved for trial—based solely on an eve-of-trial change of heart. This is not a gambit applicable law permits or this Court should countenance.

## II.     WTEC Will Suffer Undue Prejudice if the Motion is Granted

Beyond the bad faith, delay, and dilatory motive detailed above, AWG's Motion would inflict undue prejudice on WTEC if granted. The Seventh Circuit has held that "[p]rejudice to the nonmoving party caused by undue delay is a particularly important consideration when assessing a motion under Rule 15(a)(2)." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022).

As mentioned above, AWG bears the burden of demonstrating no undue prejudice, *Pethtel*, 2026 WL 1242895, at *2, and it has not met that burden here.

WTEC has invested fully in trial preparation built around defending against the intertwined causes of action in Count II and Count IV. This is not a case where a claim is being dropped early and no one has relied upon it. Count IV survived summary judgment after full briefing. WTEC has shaped its trial strategy, its witness preparation, and its evidentiary presentation around a two-count trial in which the factual narratives of both claims are deeply intertwined. The two causes of action share the same witnesses, the same documents, the same depositions, and the same factual core—the alleged defectiveness of WTEC's cable and AWG's conduct in response. The parties took discovery on both claims together; they deposed the same witnesses on facts relevant to both; and this Court analyzed both claims in the same summary judgment order, drawing on a shared factual record to evaluate each.

Further, the factual record developed in this case does not divide neatly into "Count II evidence" and "Count IV evidence"—because the claims share the same factual core, the evidence developed in connection with one is independently relevant to the other. This reality underscores that the two claims have become so deeply intertwined through years of joint litigation that they cannot now be separated without prejudice to WTEC—and confirms that the withdrawal of Count IV cannot accomplish the narrowing of the trial record that AWG seeks.

Permitting amendment at this late stage would require WTEC to disentangle a trial presentation that was built—with good reason—on the assumption that these claims would proceed together, and would effectively rewrite the terms on which this case proceeds to trial after WTEC has already committed its resources in reliance on the operative pleadings and this Court's summary judgment rulings. *See Talton,* 2004 WL 3119007 at *6 (in denying motion to amend

because plaintiff would suffer undue prejudice, noting that "Plaintiff can fairly expect to proceed now to trial on the case as it has been framed over the many years of pretrial skirmishes").

Additionally, WTEC has incurred substantial costs defending against Count IV—costs AWG itself acknowledges by noting it opposed WTEC's summary judgment motion on this claim (*see* Dkt. 140, p. 7 n.2). WTEC also has prevailing-party interests arising from the Settlement Agreement's attorneys' fees provision (*see* Dkt. 102-25), which the withdrawal of Count IV— representing the third claim AWG has dismissed or withdrawn in this litigation—directly implicates.

### III. In the Alternative, if the Court Grants Plaintiff's Motion, Pre-Indemnity Evidence Must Remain Independently Admissible

Whatever the ostensible purpose of AWG's Motion, its aim is clearly evidentiary and, if successful, would be deeply prejudicial to WTEC. AWG wants to choke the trial record. This cannot happen regardless of the outcome of this Motion.

The law is clear that evidence related to a dismissed claim does not automatically become inadmissible; it remains admissible so long as it retains independent relevance to surviving claims. *See Gaines v. Chicago Board of Education*, 717 F. Supp. 3d 746, 773-774 (N.D. Ill. 2024) (denying blanket motion *in limine* to exclude all evidence related to a voluntarily dismissed claim because the evidence might encompass material relevant to surviving claims).

Here, the pre-indemnity evidence—including the underlying liability for the allegedly defective cable products that AWG is so desperate to avoid—is independently and directly relevant to WTEC's defense on Count II. The applicable indemnity provision provides that "AWG and WTEC will work together and cooperate in good faith to resolve any such claim." (Dkt. 102-25.) This Court held at summary judgment that this cooperation clause establishes "a contractual condition precedent to suit" and that whether AWG cooperated in good faith is "an open question

of fact." (Dkt. 122, pp. 6-7.) AWG's pre-indemnity conduct—its exclusion of WTEC from Signal communications, its refusal to provide cable samples despite WTEC's repeated requests, its instruction that Signal not communicate with WTEC, and its unilateral conclusion that WTEC's cable was defective—constitutes course-of-dealing evidence independently relevant to whether AWG acted in good faith when it demanded indemnification. (*See supra*, p. 3 n.1.)

This Court itself recognized as much during the February 10, 2026 hearing, when it stated: "Without prejudging the issue, I could see where the question or issue of defectiveness might be relevant to the affirmative defense in some limited circumstances, including whether AWG acted in good faith." (Dkt. 138, 18:12-16.) AWG's effort to exclude this evidence is not new—it dates to AWG's first premature summary judgment motion in September 2023 (Dkt. 17), continued through AWG's motion to clarify sequencing in January 2026 (Dkt. 129), and culminated at the February 10, 2026 hearing where AWG urged this Court to restrict WTEC from presenting evidence of defective cable (Dkt. 138, 12:7-13:16). At each juncture, this Court has declined to foreclose WTEC's ability to present the full factual picture. Accordingly, even if the Court grants AWG's Motion, the Court must recognize that the pre-indemnity evidence remains admissible on Count II.

## CONCLUSION

For the foregoing reasons, WTEC respectfully requests that the Court deny AWG's Motion for Leave to Amend its Complaint to Withdraw Count IV. In the alternative, should the Court grant the Motion, WTEC respectfully requests that the Court simultaneously rule that the dismissal of Count IV does not render inadmissible any evidence that is independently relevant to Count II.

Dated: May 26, 2026                    Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: /s/ *Mark A. Konkel*
Mark A. Konkel, *pro hac vice*
Benjamin Gilman, *pro hac vice*
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
mkonkel@kelleydrye.com
bgilman@kelleydrye.com
*Attorneys for Defendant*
*Wind Turbine and Energy Cables Corp.*

12

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 26, 2026 he caused the foregoing to be filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.


/s/ *Mark A. Konkel*